In re MASON–SEAMAN TRANSP. CO.

(District Court, S. D. New York.   September 30, 1916.)

1. BANKRUPTCY ⟨Key⟩92—PETITION—SUFFICIENCY.

A motion to dismiss is the proper means to test the sufficiency of a petition in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 107, 108, 133–136; Dec. Dig. ⟨Key⟩92.]

2. BANKRUPTCY ⟨Key⟩92—MOTION TO DISMISS—LACHES.

A motion to dismiss a petition in bankruptcy will not be denied on the ground of laches, though an answer had been filed and the case noticed before the referee, where there had been no hearing and the case had only recently come to issue; it appearing that when the matter came up before the referee, counsel for the alleged bankrupt then moved for a dismissal of the petition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 107, 108, 133–136; Dec. Dig. ⟨Key⟩92.]

3. BANKRUPTCY ⟨Key⟩92—MOTION TO DISMISS—NOTICE TO CREDITORS.

Under Bankruptcy Act July 1, 1898, c. 541, § 59g, 30 Stat. 561 (Comp. St. 1913, § 9643), providing that a voluntary or involuntary petition shall not be dismissed by the petitioners, or by consent of the parties until after notice to the creditors, and that the court shall, before entering an application for dismissal, require the bankrupt to file a list of creditors, to whom notice shall be sent, the hearing being delayed for a reasonable time to allow them an opportunity to be heard, notice of motion to dismiss need not be served on all the creditors, where it was opposed by the petitioning creditors, who were few in number and were not joined by the vast majority of the creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 107, 108, 133–136; Dec. Dig. ⟨Key⟩92.]

4. BANKRUPTCY ⟨Key⟩81(4)—PETITION—SUFFICIENCY.

A petition in bankruptcy, alleging that the bankrupt had made payments in unknown amounts to unknown creditors within four months preceding the filing of the petition, which operated as preferences, and that the bankrupt had made payments to a named bank in excess of $5,000, the exact amount of which was unknown, with intent to prefer such creditor, is insufficient, not apprizing the bankrupt of what contention it should meet, and it being possible that the payments did not constitute acts of bankruptcy, and the petition is particularly vulnerable to attack where a receiver had been appointed for the bankrupt and was conducting its business for the benefit of creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 59, 118; Dec. Dig. ⟨Key⟩81(4).]

In Bankruptcy. In the matter of the alleged bankruptcy of the Mason-Seaman Transportation Company. On motion to dismiss. Motion granted.

Henry B. Twombly, of New York City, for Mason-Seaman Transp. Co.

William Lesser and James B. Stephens, both of New York City, for petitioning creditors.

MANTON, District Judge. This is an application by the alleged bankrupt for a dismissal of the petition filed against it on the 30th of May, 1916. On the 31st of March, 1916, in a creditors' action, a

bill of complaint was filed in this court against the Mason-Seaman Transportation Company, and on said date an order and decree of this court was made, appointing two receivers, with full powers to administer all the property of said company, which they are now engaged in doing. Its business is operating taxicabs in the city of New York. One of the receivers appointed was a man of experience, who had formerly been associated in the operation of the business. The other receiver was appointed by the court as the "ear of the court." Subsequently a foreclosure action was brought by the Columbia Trust Company and participated in by the Empire Trust Company, and the same receivers were appointed in said action. A sufficient bond has been given by the receivers which indemnifies the creditors from loss through the receivers, and it would seem that the full protection has thus been accorded the creditors. Two months later three petitioning creditors, having an aggregate claim of $1,315, out of a list of creditors representing about $200,000, filed this petition in bankruptcy. These petitioning creditors represented about one-third of 1 per cent. of the total amount. The petition alleges:

"And petitioners further represent that the said alleged bankrupt is insolvent, and that within four months next preceding the date of filing this petition the said alleged bankrupt committed acts of bankruptcy while so insolvent as follows: During said period said alleged bankrupt paid to certain creditors whose names are unknown to petitioners certain sums in cash and by check, the amounts of which are unknown to petitioners, in settlement or on account of antecedent indebtedness, with intent to prefer such creditors over and above other creditors of the same class. During said period said alleged bankrupt paid to the Broadway Trust Company, and other persons or parties whose names are unknown to your petitioners, but being parties who held certain notes or obligations of the above-named alleged bankrupt, the particulars of which are unknown to your petitioners, certain sums of money, amounting to the sum of $5,000 and upwards, the exact amount of which your petitioners have been unable to ascertain in settlement of said notes and obligations of said alleged bankrupt, with intent to prefer the holders of said notes and obligations over and above other creditors of the same class, and also with intent on the part of said alleged bankrupt corporation to prefer William H. Barnard and J. W. Salisbury over and above other creditors of the same class, being, respectively, the president and treasurer of said alleged bankrupt corporation, who, at the time of said payments, were the indorsers or guarantors of said notes and obligations, and who, by the payment thereof to the holders thereof, were relieved from liability thereunder."

An answer has been filed in which the foregoing allegations are denied.

[1-3] This motion to dismiss seems to be the proper remedy. Matter of Mary Jones (D. C.) 209 Fed. 717, 31 Am. Bankr. Rep. 693. But it is urged on behalf of the petitioners that this application is late, and the right to make it has been waived by the alleged bankrupt. In support of this claim counsel cite In re Walter R. Cliffe (D. C.) 94 Fed. 354, and In re Rosenblatt, 193 Fed. 638, 113 C. C. A. 506, 28 Am. Bankr. Rep. 401.

In the first case, an answer was interposed, and there was a trial of the issues, after which a motion to dismiss was made. The court held the motion late and the petitioner guilty of laches. In the case at bar the case is but recently at issue, and while it was noticed be-

fore the referee in bankruptcy, there have been no hearings. In fact, counsel for the alleged bankrupt did move, when the matter came up before the referee, to dismiss the petition, and it was not heard for the reason that the referee stated that he was without jurisdiction to hear it, and has resulted in this application. Section 59—G of the Bankruptcy Act as amended in 1910 provides:

"A voluntary or involuntary petition should not be dismissed by the petitioner or petitioners or by consent of parties until after notice to the creditors, and to that end the court shall, before entering an application for dismissal, require the bankrupt to file a list, under oath, of all his creditors, with their addresses, and shall cause notice to be sent to all such creditors of the pendency of such application, and shall delay the hearing thereon for a reasonable time to allow all creditors and parties in interest opportunity to be heard."

In the Rosenblatt matter, Judge Lacombe said:

"At about the time demurrers were filed the bankrupts gave notice of motion to dismiss the proceedings, and complied strictly with the provisions of this section requiring notice of such application to be given all creditors."

I do not think that the Circuit Court of Appeals intended to hold that under this provision of the Bankruptcy Act it was requisite for the alleged bankrupt to serve notice of this application upon all the creditors. The application in the Rosenblatt Case was practically upon the consent of all the creditors. The court said:

"At the hearing it appeared that the total indebtedness * * * was in round numbers $690,000, owing to 191 creditors. Seventy creditors whose claims amounted to $22,000 were secured. Only 4 creditors, exclusive of Phillips, had failed to consent to the dismissal, their claims aggregating $3,668.44. Of these 4 2 had attached credit balances in certain banks in Europe subsequent to the filing of the petition, and accordingly could not come into the bankruptcy proceedings without surrendering their preferences. The 2 remaining nonassenting creditors (their claims amounted to $239.71) appeared at the hearing and consented to the dismissal. This left Phillips, with a disputed claim, standing alone. There were no longer 3 bona fide creditors whose claims amounted to $500 insisting on the prosecution of bankruptcy proceedings."

Apparently the dismissal was practically on consent of the parties, including the petitioning creditors and alleged bankrupt, and made it necessary within section 59—G of the Bankruptcy Act to serve notice of application on all the creditors.

In the present case, however, there is neither an application by the petitioner for the dismissal nor is there the consent of any of the parties, and the application is opposed by the petitioning creditor. As I read this section, under these circumstances, I think that notice of this application, served upon the petitioning creditors, who have appeared in the proceeding, is sufficient, and I, therefore, find against the claim of the petitioning creditors that notice should be served upon all the creditors of the alleged bankrupt.

[4] The question is therefore presented whether the statements in the foregoing petition are sufficient under the authorities to require the alleged bankrupt to answer, or whether the petition as filed is insufficient. As the petition stands, the allegations are wholly indefinite as to time, place, and circumstances of the payments made to the Broadway Trust Company. No statement is made as to the exact

amount of the notes of the Broadway Trust Company, except the amount alleged to have been paid is stated as "$5,000 and upwards." No facts are stated which would definitely appraise the bankrupt what he is required to answer. For example, any payment to the trust company would be legal if made within four months, and even, with knowledge on the part of the trust company of the insolvency of the bankrupt, if payments were made out of the funds of the company in the hands of the trust company regularly deposited in a deposit account. Amer. Bank & Trust Co. v. Coppard, 227 Fed. 597, 142 C. C. A. 229. Payment may be made for money borrowed in order to keep the company in business, or for current rent, neither of which would constitute an act of bankruptcy. In re Perlhefter (D. C.) 177 Fed. 299; In re Barrett, 6 Am. Bankr. Rep. 199.

In re Blumberg (D. C.) 133 Fed. 845, 13 Am. Bankr. Rep. 343, the petition read that:

"The said Louis Blumberg, trading as L. Blumberg & Co., while insolvent, within four months next preceding the date of this petition, committed an act of bankruptcy, and that during the months of August and September, 1904, he transferred, while insolvent, some of the moneys received by him from the improper sale of said merchandise unto the Tradesmen's National Bank of the City of Philadelphia, with intent to prefer said bank, and the indorsers and makers of promissory notes held by the bank, and relieve them from further liability to said bank over and above his other creditors."

Upon demurrer this petition was held insufficient. The court said:

"I think, also, that the facts concerning the payments to the Tradesmen's National Bank should be set out more specifically. As the petition stands, no amount is named, nor is it even averred, except by inference, that the payments were made upon the bankrupt's promissory notes, to say nothing of the vagueness of the reference to 'the indorsers and makers of promissory notes held by said bank,' whom the bankrupt is charged with intending to prefer."

General averments as to acts of bankruptcy are not sufficient. In re Rosenblatt, 193 Fed. 638, 113 C. C. A. 506, 28 Am. Bankr. Rep. 401; In re Comdon, 209 Fed. 800, 126 C. C. A. 524, 31 Am. Bankr. Rep. 754; In re Hallin (D. C.) 199 Fed. 806, 28 Am. Bankr. Rep. 708; In re Pressed Steel Goods Co. (D. C.) 193 Fed. 811, 27 Am. Bankr. Rep. 44.

The court has permitted a continuance of this business by the receiver, and we must assume that this is for the benefit of the creditors. An adjudication in bankruptcy would add expense to the estate and confusion to the carrying on of the business. I think this inadvisable in the absence of a clear and definite statement of acts of bankruptcy which would give the creditors an adjudication in bankruptcy as a matter of right. The petitioners stand upon their petition, and do not ask for leave to amend, so therefore leave to amend is not granted.

The motion to dismiss the petition is granted.