In re NUSBAUM.

(District Court, N. D. New York. April 22, 1907.)

1. BANKRUPTCY—ACTS OF BANKRUPT—LIMITATIONS.

Bankr. Act July 1, 1898, c. 541, § 1, subd. 25, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420], amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 682], provides that the term "transfers" shall include the sale and every other and different mode of disposing of or parting with property, as a payment, pledge, mortgage, gift, or security. Section 3, subd. "a," declares that acts of bankruptcy shall consist of a person having (1) conveyed, transferred, concealed, or removed any part of his property, with intent to hinder, delay, or defraud his creditors or any of them; or (2) transferred, while insolvent, any portion of his property to one or more of his creditors, with intent to prefer such creditors over other creditors; or (3) suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings as not having at least five days before the sale or final disposition of any property affected by such preference vacated or discharged the same. *Held,* that where a person, while insolvent, voluntarily confessed judgment in favor of certain creditors, and permitted them to levy executions on and sell his property thereunder without having vacated such sale, such proceedings constituted a "transfer" within clauses 1 and 2 of section 3, independent of clause 3, and therefore limitations against the creditor's right to file a bankruptcy petition ran from the day of the sale, and not from a period five days prior thereto.

2. SAME.

Bankr. Act July 1, 1898, c. 541. § 3, subd. "a," cl. 3, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], declares that if a person, while insolvent, shall suffer or permit any creditor to obtain a preference through legal proceedings, and shall not at least five days before the sale or final disposition of any property affected by such preference vacate or discharge the same, he thereby commits an act of bankruptcy. *Held* that, while the failure to discharge a levy five days before sale is an act of bankruptcy, an independent act of bankruptcy is also committed by a failure to discharge the levy on each succeeding day, including the day of the sale.

3. SAME—PLEADINGS—ACTS OF BANKRUPTCY.

Petitioners in bankruptcy are entitled to allege and prove any number of acts of bankruptcy.

4. SAME—AMENDMENT.

Petitioners in bankruptcy are entitled to amend their petition for the purpose of setting up additional acts of bankruptcy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 128.]

Motion to confirm report of special master refusing to dismiss the petition of creditors in involuntary proceedings on the ground the petition was not filed in time.

George F. Morss, for petitioners.
J. A. Goldstone, for alleged bankrupt.

RAY, District Judge. December 20, 1905, the alleged bankrupt, while insolvent, voluntarily confessed nine judgments to and in favor of certain of his creditors, to the exclusion of others, and under such circumstances as to show an intent and purpose thereby to cheat, hinder, delay, and defraud his other creditors, and allow and permit the creditors in whose favor he confessed such judgments to obtain a preference over his other creditors, and by such means and in this manner to

transfer his property to the said judgment creditors or for their benefit, in payment or satisfaction of their debts or claims against them. The judgments, aggregating $1,230.46 and $11.25 costs, were confessed in a court of a justice of the peace, not a court of record, and executions thereon were thereafter issued and levies made thereunder, and all his property was sold on such executions and others on the 22d day of December, 1905. On one judgment for $429.49 only $40 was made, and execution as to the balance was returned unsatisfied December 29, 1905. Many creditors remained unpaid, and April 21, 1906, within four months after the sale, this petition in bankruptcy was filed. The alleged bankrupt did not "at least five days before a sale or disposition of" his property under such executions vacate or discharge the judgments, executions, or levies.

Subdivision 25 of section 1 of the act entitled "An act to establish a uniform system of bankruptcy throughout the United States," approved July 1, 1898 (Act July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420], amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 682]), "Meaning of Words and Phrases," provides:

"Transfer shall include the sale and every other and different mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift or security."

Subdivision "b" of section 3 of the same act provides that:

"A petition may be filed against a person who is insolvent and who has committed an act of bankruptcy within four months after the commission of such act."

Also:

"Such time shall not expire until four months after the date of the recording or registering of the transfer or assignment when the act consists in having made a transfer of any of his property with intent to hinder, delay or defraud his creditors, or for the purpose of giving a preference as hereinbefore provided * * * if by law such recording or registering is required or permitted, or, if it is not, from the date when the beneficiary takes notorious, exclusive, or continuous possession of the property, unless the petitioning creditors have received actual notice of such transfer or assignment."

There is no pretense here of any such notice. If there was a "transfer" by the alleged bankrupt, it was one which the law neither permits nor requires to be recorded or registered in any sense within the meaning of the act. Hence, if there was a "transfer," the statute of limitations ran from the day of sale.

Section 3 of the same act, in subdivision "a," provides that:

"Acts of bankruptcy by a person shall consist of his having (1) conveyed, transferred, concealed or removed any part of his property with intent to hinder, delay, or defraud his creditors or any of them; or (2) transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors; or (3) suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference," etc.

It is contended by the alleged bankrupt that all he did was to suffer, or permit, while insolvent, certain creditors to obtain a preference

through legal proceedings and fail to vacate or discharge the preference thus obtained at least five days before a sale of his property, that this was the act of bankruptcy, and that as the sale was December 22, 1905, the act of bankruptcy was committed five days before that date, or December 17, 1905, more than four months prior to the filing of the involuntary petition in bankruptcy. When the alleged bankrupt, Philip Nusbaum, being insolvent, voluntarily confessed judgment in favor of certain of his creditors with intent to hinder, delay, and defraud his other creditors, and also with the intent to prefer such creditors over his other creditors, and permitted them, as he knew they would and as they did, to issue executions thereon and levy upon and sell all his property by virtue thereof, and put the proceeds of such sale of such property in their pockets in payment and satisfaction of their respective debts, as he knew they would and intended they should, he transferred same while insolvent, with intent to hinder, delay, and defraud his other creditors, and with intent to prefer the creditors in whose favor he confessed such judgments. It was not a sale by him in form, but it was "a different mode of disposing of or parting with property, or the possession of property absolutely," and "as a security" first, and then, second, "as a payment" to such preferred creditors. It was an act of bankruptcy under both clause 1 and clause 2 of subdivision "a" of section 3 of the act, irrespective of clause 3 thereof. It was a "transfer" within the plain definition of the term found in clause 25 of section 1 of the act. The act of bankruptcy was consummated, the transfer made, when the executions were issued and the sale by virtue thereof actually made, and the petitioning creditors were in time if they filed their petition within four months after such sale, as it is alleged they did. It was a transfer made by the alleged bankrupt who confessed the judgments that executions might be issued, levies made, sales made, and his property or its proceeds conveyed or transferred to his preferred creditors in payment of their debts. It was done to hinder, delay, and defraud his other creditors.

But, while these facts are stated in the brief, I find no proof or admission that Nusbaum confessed the judgments and set on foot the transfer. The case is sent back to the special master to take proof of all the facts in this regard as to when and how and where the judgments were confessed, the execution issued, the sale advertised and made, etc., as it is very doubtful that the petition was in time on the mere ground of a preference through legal proceedings. These petitioners should not be sent out of court because of failure to present their case as it actually is. The petitioners may file an amended petition nunc pro tunc alleging an act of bankruptcy under all three clauses of subdivision "a" of section 3.

The following cases indicate, and one of them holds, that the act of bankruptcy under claim 3 is consummated the fifth day prior to the sale and that the limitation of four months then commences to run. The failure to vacate and discharge a judgment and levy on execution thereunder at least five days before the sale or day fixed for sale is an act of bankruptcy, and hence the petition may be filed before the sale. In re Rung Furniture Co., 139 Fed. 526, 71 C. C. A. 342; Bogen

& Trummel v. Protter, 129 Fed. 533, 64 C. C. A. 63; Wilson v. Nelson, 183 U. S. 191, 22 Sup. Ct. 74, 46 L. Ed. 147; White et al. v. Bradley Timber Co. (D. C.) 119 Fed. 989; In re National Hotel & Café Co. (D. C.) 138 Fed. 947; Parmenter Mfg. Co. v. Stoever, 97 Fed. 330, 38 C. C. A. 200; Seaboard S. C. Co. v. W. R. Trigg & Co., 124 Fed. (D. C.) 76, 77. In Re National Hotel & Café Co., supra, Holland, District Judge, held that the act of bankruptcy is consummated and complete on the fifth day prior to the sale. This holding makes the fact of a sale immaterial. If a sale under the levy is advertised, the act of bankruptcy is complete. Judge Holland says:

"In other words, it seems to me that it was the intention to fix the consummation of the act of bankruptcy upon an alleged bankrupt five days before the day of sale, if at that time he had failed to lift a levy on his property. A petition can then be filed before the sale, and the property administered in bankruptcy for the benefit of all the creditors. While this precise question has never been determined, so far as I have been able to ascertain, the reasonings in the following cases sustain the above conclusions: In re Aaron Meyers, 1 Am. Bankr. Rep. 1; Metcalf Bros. & Co. v. Barker, 187 U. S. 165, 23 Sup. Ct. 67, 47 L. Ed. 122, 9 Am. Bankr. Rep. 36; Parmenter Mfg. Co. v. Stoever et al., 97 Fed. 330, 38 C. C. A. 200; Collier on Bankruptcy (5th Ed.) p. 42."

The syllabus in Parmenter Mfg. Co. v. Stoever et al., 97 Fed. 330, 38 C. C. A. 200, is misleading. First, all the court was called upon to decide was that the four months does not run from the time property is attached in a suit before judgment. That ended that case. What the court did say in addition is as follows:

"The petition in bankruptcy was filed on February 1, 1899. This was more than four months after the attachment was made, but within four months from the times of seizure and sale on execution. * * * Regard, however, must be had to the whole of clause 3; and, in view of that, what the appellant 'suffered or permitted' was the sale of its property through legal proceedings. This was clearly the true act of bankruptcy within the contemplation of the statute, although the statute is somewhat awkwardly expressed. In like manner, as the failure to vacate the execution before the sale was the act of bankruptcy, it is clear that the four months period runs, not from the attachment, but from a date connected with the proceedings after the judgment."

The following extract from the opinion of the court is directly opposed to the syllabus, to repeat:

"What the appellant suffered or permitted was the sale of its property through legal proceedings. This was clearly the true act of bankruptcy within the contemplation of the statute."

All the cases hold that an act of bankruptcy is committed on the failure to discharge the lien of the levy five days before the sale. In all but one a sale was made. In only one case did the question of the limitation arise. Duncan v. Landis, 106 Fed. 839, 45 C. C. A. 666, is opposed to Wilson v. Nelson, 183 U. S. 191, 22 Sup. Ct. 74, 46 L. Ed. 147. I am of the opinion that, while such failure to discharge a levy five days before the sale is an act of bankruptcy, such failure four and three and two days and one day before the sale are also distinct acts of bankruptcy as is the failure on the day of sale. In Bradley Timber Co. v. White et al., supra, it was held that the petitions may allege and prove any number of acts of bankruptcy, and it is far better, if petitioners are so advised, that they set up and prove all the facts.

I am disposed to give them the opportunity, and hence the matter is sent back to the special master for proceedings in accordance with this opinion. The amendment suggested may be made under the authority of Hark v. C. M. Allen Co. (C. C. A.) 146 Fed. 665.