## In re GODWIN.

(District Court, E. D. North Carolina, Raleigh Division. January 4, 1924.)

### No. 1036.

1. **Bankruptcy** ⊜59—**Mere failure to discharge lien within five days before expiration of four months' period not "act of bankruptcy."**

The mere failure of a debtor to vacate or discharge a lien obtained on his property through legal proceedings, while insolvent, within at least

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

five days before the expiration of four months after the lien became effective, does not constitute an "act of bankruptcy," under Bankruptcy Act, § 3a (3), being Comp. St. § 9587.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Act of Bankruptcy.]

**2. Bankruptcy ⬤81(4)—Involuntary petition must state essential facts.**

It is not sufficient to allege an act of bankruptcy in an involuntary petition in the language of the statute, but the essential facts must be clearly set out.

**3. Bankruptcy ⬤81(4)—Involuntary petition held demurrable as not alleging act of bankruptcy under Bankruptcy Act, § 3a (3).**

An involuntary petition in bankruptcy attempting to set up the act of bankruptcy defined by Bankruptcy Act, § 3a (3) being Comp. St. § 9587, in the language of the statute, by averring that defendant suffered a judgment to be docketed against him in a certain county and not vacating or discharging such preference at least five days before a sale or final disposition of any property affected by such preference, it not appearing from the petition that defendant owned any land in such county upon which the judgment constituted a lien, nor that he had any personal property therein subject to levy under execution, nor that any execution had been issued upon the judgment, was bad on demurrer as failing to state that a sale or other final disposition of the property affected by the preference was threatened or that any action had been taken by the judgment creditor for the purpose of bringing about such a final disposition.

In Bankruptcy. In the matter of H. L. Godwin, alleged bankrupt. On motion to dismiss petition. Motion granted, with leave to amend.

S. Brown Shepherd, of Raleigh, N. C., R. H. Sykes, of Durham, N. C., and Chas. Ross, of Lillington, N. C., for petitioning creditors.

Clifford & Townsend and Godwin & Williams, all of Dunn, N. C., for respondent.

CONNOR, District Judge. Three creditors of H. L. Godwin, representing the requisite amount of debts, on October 6, 1923, filed a petition in this court, based upon the requisite allegations, other than the act of bankruptcy, praying that respondent be adjudged an involuntary bankrupt, as provided by section 18, Bankruptcy Act (Comp. St. § 9602). The petition, as amended, alleges, as an act of bankruptcy committed by respondent:

"That said H. L. Godwin, while insolvent, and within four months next preceding the date of this petition, to wit, July 2, 1923, committed an act of bankruptcy, in that he suffered and permitted, while insolvent, a creditor to obtain a preference through legal proceedings as follows: He permitted and suffered a judgment against him to be entered of record in the office of the superior court of Harnett county, N. C., in the sum of $7,983.54 in favor of G. Ober & Sons Company and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference."

Upon service of the subpœna respondent filed a motion to dismiss the petition for that:

"Said petition is insufficient in law and fails to allege facts sufficient to constitute an act of bankruptcy as set forth in the Bankruptcy Act, notwithstanding the fact that the petitioning creditors attempted to allege an act of bankruptcy under the third act; because said petition contains no allegation

of any sale or final disposition of any property affected by such alleged preference and the failure to vacate or discharge such alleged preference, at least five days before final disposition."

For a second ground for dismissing the petition, respondent avers that it contains no allegation that such "confessed judgment was made with intent to prefer such creditor." This ground for dismissing the petition may be put aside with the suggestion that the only act of bankruptcy alleged is that defined by section 3a (3) of the Bankruptcy Act (Comp. St. § 9587); there is no allegation that respondent "confessed a judgment" within the provisions of section 3a (2), but only that he "permitted and suffered" a judgment to be taken, etc., coming in that respect within the language of section 3a (3).

The motion, in the nature of a demurrer, admits that respondent permitted or suffered G. Ober & Sons Company to take the judgment against him, and that it was duly recorded or "docketed" in the superior court of Harnett county. It is not alleged, nor does it appear from the petition, that respondent owned, at the date the "judgment was docketed," any real estate in Harnett county, upon which it constituted a lien; nor does it appear, from the petition, that respondent owned any personal property subject to levy and sale upon an execution issuing on such judgment.

If the petition be treated as a complaint in an action at law, the rules of pleading, prescribed by the Civil Code of the state (C. S. N. C. § 506), under the Conformity Act, would require the petitioners to state, in a concise way, the facts upon which they rely for the relief demanded.

[1] If, as it would seem is more appropriate, the petition be treated as a bill in equity, the rule (Equity Rule 25) requires that the petitioners should state their case by "a short and plain statement of the ultimate facts upon which they ask relief, omitting mere statement of evidence." Tested by either standard, the petition fails to state that "a sale or other final disposition of the property affected by the preference" was threatened, or that any action had been taken by the judgment creditor, for the purpose of bringing about a sale or final disposition of the property of respondent. It was probably the view of counsel for petitioners that the docketed judgment created a lien upon the real estate of respondent, which, after four months from the date of the docketing, would not be vacated by an adjudication in bankruptcy. That it was, therefore, necessary for the other creditors to file the petition, without waiting for action by the judgment creditor, bringing on a sale of the property, before the expiration of four months, etc. That the failure of the bankrupt to discharge the judgment or remove the lien which created the preference constituted an act of bankruptcy under section 3a (3) of the act. This view finds support in several cases decided by District Judges and Circuit Courts of Appeal. In re Rung Furniture Co., 139 Fed. 526, 71 C. C. A. 342 (C. C. A. 2d Cir.) and cases cited. The court in Folger v. Putnam, 194 Fed. 793, 114 C. C. A. 513 (C. C. A. 9th Cir.) so held. Wolverton, Judge, concluding a discussion of the decisions to that date (March, 1912), says:

"We hold, therefore, that it is incumbent upon an insolvent person to discharge or vacate a lien secured by an attachment upon his property at least five days before a period of four months expires following the date of the levy of such attachment, and if he fails therein he commits the third act of bankruptcy."

The learned judge concedes that this construction of the act, section 3a (3), is opposed to the conclusion reached by the Circuit Court of Appeals of the First Circuit in Parmenter Mfg. Co. v. Stoever, 97 Fed. 330, 38 C. C. A. 200.

The question was carefully considered, and the decisions of the federal court reviewed, by Judge Rose, then District Judge of the District of Maryland, now Circuit Judge Fourth Circuit, in Re Truitt (D. C.) 203 Fed. 550. In that case the petition alleged:

"That the debtor is the owner of certain described real estate in Wicomico county, Md.; that within four months before its filing he had, while insolvent and with intent to prefer certain named creditors, transferred to them by way of security his interest in such real property by permitting confessed judgments in their favor and against him to be docketed, entered, and recorded in the circuit court for that county."

In the fourth paragraph petitioners alleged that—

"The debtor owned real estate in" said county, "and that while insolvent and on a day particularly specified, which was two or three days less than four months before the filing of the petition in bankruptcy, he permitted named creditors to obtain judgments against him in the circuit court for that county; that he has done nothing to satisfy or discharge such judgments or the liens created by them; and that within less than five days after the filing of the petition the lien created by them will become absolute and unavoidable by the trustee in bankruptcy and the property will thereby become finally disposed of and sequestered by such judgment creditors."

The learned judge notes that this paragraph is carefully modeled on the language used in the creditor's petition, in Folger v. Putnam, 194 Fed. 793, 114 C. C. A. 513.

After disposing of the questions presented by the demurrer upon the other paragraphs of the petition, relating to alleged acts of bankruptcy, under section 3a (2) of the act, the judge proceeds to discuss the question raised by the demurrer to the fourth paragraph. After stating the contentions of the petitioning creditors, being the same contention made here, he says that "it has been held unsound" in a number of cases, which he cites.

Following a very able and satisfactory discussion of the variant views of the courts and contentions of counsel, Judge Rose, in reply to the objections urged against the demurrer, and the results incident to sustaining it, says:

"The courts may not change what Congress did on the theory that the general purpose of Congress will be more nearly carried out by construing the act to mean something which Congress was unwilling to say."

He sustained the demurrer as to "article four of the petition." The opinion illustrates the care with which Judge Rose examines every case and the clarity with which he sustains his conclusions and the reasons upon which they are founded. The opinion was filed March 14, 1913.

On June 8, 1914, the Supreme Court put the question at rest, in Citizens' Bank v. Ravenna Bank, 234 U. S. 360, 34 Sup. Ct. 806, 58 L. Ed.

1352, reaching the same conclusion as did Judge Rose. In that case creditors of Mrs. Cora M. Curtis filed a petition seeking to have her adjudged an involuntary bankrupt, alleging that she had committed an act of bankruptcy for that—

"While insolvent, she suffered and permitted the Citizens' Banking Company to recover a judgment against her * * * in the common pleas court of Erie county, Ohio, and to have an execution issued under the judgment and levied on real estate belonging to her, whereby the company obtained a preference over her other creditors, and at the time of the filing of the petition, which was one day less than four months after the levy of the execution, she had not vacated or discharged the levy and resulting preference."

The company moved the court to dismiss the petition, for that it disclosed no act of bankruptcy. The motion was denied, and an appeal taken to the Circuit Court of Appeals. 202 Fed. 892, 121 C. C. A. 250. The court, not being able to reach a conclusion, certified the following questions to the Supreme Court with a request for instruction, etc.:

(1) Whether the failure by an insolvent judgment debtor, and for a period of one day less than four months after the levy of an execution upon his real estate, to vacate or discharge such levy, is a final disposition of the property affected by such levy under the provisions of section 3a (3) of the Bankruptcy Act of 1898.

(2) Whether an insolvent debtor commits an act of bankruptcy rendering him subject to involuntary adjudication as a bankrupt under the Bankruptcy Act of 1898, merely by inaction for the period of four months after the levy of an execution upon his real estate.

It will be observed that by the provisions of the statute of this state a docketed judgment constitutes a lien on the real estate of a judgment debtor, from the date of its docketing, situate in any county in which the judgment is docketed. No lien attaches by virtue of the levy of an execution. It is otherwise as to personal property, but no sale can be made of either kind of property to enforce the payment of the judgment, until an execution issues from the court in which the judgment is rendered. Transcripts of judgment issuing from the court in which it is rendered may be docketed in the superior court of any county in which the judgment debtor owns real property, constituting a lien on such property from the date upon which it is docketed. With this statutory procedure for securing a lien and its enforcement in view, the facts in this case are, in all essential respects, on "all fours" with those found in the Ravenna Bank Case. The fact that, in this case, the judgment against respondent was rendered July 2, 1923, and the petition was filed October 6, 1923, three months after the date of the docketing in the superior court of Harnett county, does not affect the question presented by the demurrer.

Mr. Justice Van Devanter, after quoting the language of section 3a (3) of the act, says:

"Without any doubt this clause shows that the debtor is to have until five days before an approaching or impending event within which to vacate or discharge the lien out of which the preference arises. What, then, is the event which he is required to anticipate? The statute answers, 'a sale or final disposition of any property affected by such preference.' As these words are part of a provision dealing with liens obtained through legal proceedings, and as the enforcement of such a lien usually consists in selling some or all of

the property affected and applying the proceeds to the creditor's demand, it seems quite plain that it is to such a sale that the clause refers. * * * We do no perceive anything in the clause which suggests that the time when the lien is obtained has any bearing [upon the time] when the property must be freed from it to avoid an act of bankruptcy. On the contrary, the natural and plain import of the language employed is that it will suffice if the lien is lifted five days before a sale or final disposition of any of the property affected. This is the only point of time that is mentioned, and the implication is that it is intended to be controlling."

Both questions were answered in the negative, noting the fact that some diversity of opinion has arisen in other federal courts in disposing of similar questions, "and so we deem it well to observe that the conclusion here stated has been reached only after full consideration of those cases."

[2, 3] The instant case comes clearly within the conclusion reached by the Supreme Court unless, as a question of pleading, the language of the petition is to be construed as alleging that a sale of the real property of respondent was advertised and about to be made. I am not inclined to place this construction upon the statutory language used. If such had been the case, it is not conceivable that the experienced counsel, who drew the petition, would have omitted to make the averment if the facts had justified their doing so. While the courts are not astute to find, or sustain, technical objections to pleadings, it always removes obscurity and uncertainty, frequently resulting in delay and expense, for counsel to observe and follow the rules prescribed by codes of pleading and procedure, by making, in their complaint or petition, a plain and concise statement of the facts constituting a cause of action, without unnecessary repetition, or, as the equity rule prescribes, "a short and simple statement of the ultimate facts upon which the plaintiff, or petitioner, asks relief, omitting any mere statement of evidence" or conclusions of law. In this case a statement, if such was the fact, that an execution had been issued upon the judgment, relied upon as a preference and sale of the property advertised, giving date of execution and sale, the uncertainty, in respect to this essential condition, would have been obviated and the questions raised by the demurrer, fairly presented.

In petitions in involuntary bankruptcy, affecting the rights of the respondent, something more specific than the language of the statute is required to enable the court to proceed to an adjudication or a denial of the prayer for relief. The essential facts to be stated in petitions are clearly set out in a well considered and sustained opinion by the late Judge Dayton in Re McGraw, 254 Fed. (D. C. W. Va.) 442. Other illustrative cases are collected in notes and their result discussed, in 1 Collier on Bankruptcy, 654. Usually, in these proceedings, conditions are such as to call for prompt action by the court, either by adjudication, making restraining orders, or appointment of receivers, to conserve and protect property.

The necessity for observing and conforming to these rules of pleading, practice, and procedure, familiar to all practicing attorneys, is emphasized by the fact that a petition in involuntary bankruptcy may be filed and adjudication secured, upon the petition of three creditors,

whose claims aggregate $500. Bankruptcy Act, § 59 (Comp. St. § 9643). A petition may be filed and restraining orders obtained, or receivers appointed in cases involving valuable property and the interest of large numbers of creditors, who are not parties to the proceeding, frequently involving heavy and unnecessary expense and loss to the estate. The attention of attorneys is directed to the "general orders" made by the Supreme Court which, by virtue of the provisions of the statute, are to be observed as if incorporated in the statute. They are usually held to be mandatory. These "rules" are published in volume 172, U. S. S. C. Rep. Appendix, and in the standard works on bankruptcy, with annotations.

The courts frequently find embarrassment in proceeding, when counsel do not appear in person, but send the petition to the clerk for transmission to the judge for prompt action. Rules have been prescribed by the court setting out the requirements in regard to certainty and particularity in the averments, upon which motions for restraining orders and receiverships are based. These rules apply not only to the affidavits, but the petitions. An observance of them by counsel will obviate delays and, sometimes, a denial of relief, in meritorious cases, because the court is unable to proceed with that degree of safety to the rights of the alleged bankrupt and his creditors which a court should always require. In the instant case, to meet the conditions presented by the absence of an observance of the rules of pleading, an order will be entered sustaining the demurrer and dismissing the petition, unless, within five days from notice to counsel, an amendment to the petition is filed setting out specifically the essential facts constituting an act of bankruptcy, as defined by section 3a (3) of the Bankruptcy Act, as construed by the Supreme Court. An involuntary proceeding in bankruptcy is a serious matter to the debtor, as well as to his other creditors. It affects his credit, suspends and usually destroys his business —it should not be delayed in its final disposition by reason of uncertainty in the averments, which may be avoided.

Let an order nisi be drawn and served upon counsel for petitioners and respondent, dismissing the petition at the cost of petitioners, unless within five days from the service of the order an amendment be filed in the clerk's office, with copies for respondent and his attorneys, conforming the allegation to the requirements of this opinion.